283 So.2d 199 (1973)
STATE of Louisiana
v.
Richard L. HOWARD.
No. 53479.
Supreme Court of Louisiana.
September 24, 1973.
*201 Samuel H. Collins, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Special Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Appellant, Richard L. Howard, was charged by bill of information with attempted armed robbery. He was tried, convicted as charged and sentenced to serve fifteen years in the state penitentiary. He reserved ten bills of exceptions to the proceeding and trial leading to his conviction. Bills Nos. 4 and 5 are not urged on appeal and are considered abandoned.
On the morning of February 12, 1971, an attempt was made to rob Morris Ambrosia at his grocery store in the city of New Orleans. The assailant was armed with a sawed-off shotgun, which he had concealed under an overcoat. The attempt was frustrated when Ambrosia sprayed mace in the assailant's eyes. A struggle ensued in which the robber lost his balance, and, as he fell, the shotgun hit the register and its forepiece, or stock, fell to the floor. The robber then fled.
The police were summoned, retrieved the gun forepiece and proceeded with an investigation. Four or five days later Ambrosia was shown five Bureau of Identification photographs from which he identified the picture of Richard L. Howard as the man who attempted to rob him.
On the basis of the grocer's identification of Howard's picture and other information obtained in their investigation, Officer Emile R. Poissenot obtained a warrant to search Howard's residence, which he executed the same day, February 19, 1972. He found Howard at home and seized the shotgun and raincoat.

Bill No. 1
This bill was reserved during the hearing on consolidated motions to suppress a confession, the evidence seized (as not obtained incidental to a valid arrest and obtained as a result of an unlawful search without a valid warrant and without probable cause) and to suppress testimony and evidence concerning his identification as impermissibly suggestive.
During the testimony of Officer Poissenot he was questioned by defense counsel concerning the basis for the information furnished in his affidavit attached to his application for the search warrant which he executed on February 19, 1971. The affidavit set forth that, among other things, information was received from a confidential informant that Howard, a Negro male, recently released from Angola penitentiary, had perpetrated the attempted robbery of Ambrosia on February 12, 1971. When defense counsel asked Officer Poissenot for the name of the confidential informant, the State objected and the judge sustained the objection. As a result defense counsel reserved this bill. The bill has no merit. The police are privileged to withhold the names of informers in the absence of a showing of exceptional circumstances to prevent an injustice. The burden is on the defendant to show exceptional circumstances justifying disclosure. And whether the circumstances warrant disclosure is a matter which rests largely with the trial judge. State v. Dotson, 260 La. 471, 256 So. 594 (1972).
There is no showing whatsoever of any special circumstance warranting disclosure of the informant's name.

*202 BILL No. 2

The motion to suppress identification was denied and this bill was reserved. The defense argues that although the victim of the attempted armed robbery picked defendant's photograph from the five shown to him several days after the robbery, he was unable to identify the defendant in a line-up held thereafter. It is contended that the photographs shown to Ambrosia were impermissibly suggestive identification prohibited by the rule announced in U. S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). We find this bill to be without merit.
Ambrosia was within a few feet of Howard during the commission of the crime with nothing to obstruct or impair his observation of the robber. Howard wore no mask or disguise. These facts furnished an independent basis for the identification without referring to the photographs. Ambrosia explained his failure to identify Howard at the line-up to be due to the new trifocal lenses in his glasses and the fact that he was seated far to the rear. The trial judge found "... defendant was identified under circumstances wherein all of his constitutional rights had been protected and that the identification was made without any suggestion by any officers to the victim but made solely on the victim's recognition of the person who had come to his store and robbed him."
No violation of the rule of the Wade Case occurred.

Bills Nos. 3, 6, 7, 8 & 9
These bills all pertain to the introduction of certain evidence. Bill 3 was reserved to the denial of the motion to suppress evidence seized by virtue of the search warrant, the shotgun, the forepiece of the gun and the raincoat. Bills 6, 7, and 8 were reserved when this evidence was introduced at the trial over defense objection. Bill No. 9 was reserved when the photographs shown to Ambrosia several days after the robbery were introduced into evidence.
In his brief to this Court defense counsel simply cites State v. Foret, 196 La. 675, 200 So. 1 (1941) with the observation that the case "stands for the proposition that the lack of conclusive initial identification of an item of evidence should preclude its introduction into evidence. The admission of these exhibits into evidence requires reversal of this conviction." No argument is made which connects the cited law with the facts of each bill.
A study of the objections made at the time they were reserved fails to support these bills.
The motion to suppress the evidence seized as a result of the search warrant is based upon the contention that the affidavit attached to the application for the search warrant did not show probable cause for its issuance. We have only to quote that affidavit to refute the contention.
On 2-12-71, at 10:00 A.M. at 1662 Annunciation St. an attempt armed robbery occurred, reported under Item B-9449-71. The perpetrator of this armed robbery was described as a negro male in his twenties, armed with a single barrel shotgun. Information received from a confidential source that a subject by the name of Richard L. Howard, negro male, a recent release from Angola Pen. was the subject who had perpetrated this attempt armed robbery. Further information was that the subject Howard resides with his sister at 2052 Rousseau St., Apt. F. On 2-19-71, Det. Emile Poissenot, Det. Ronald Richards and Sgt. Charles Hinton went to the victim of the above attempt armed robbery and showed him six B of I photographs. The B of I photograph of the above suspect, Howard, was included in this group. After viewing this group of photographs, the victim positively identified the photograph of the above suspect *203 Howard as being the one who had attempted to hold him up on the above time and date. It should be noted that the above detectives have on previous occasions received tentative identifications from victims of other armed robberies in the immediate area and this identification was on the suspect Howard. It should further be noted that this subject Howard fits the physical description on numerous armed robberies in the immediate area of the St. Thomas Project and on most of the armed robberies either a shotgun was used or a dark colored long barrel revolver. The shotgun was usually concealed under an overcoat worn by the suspect. On one of the armed robberies, one of the perpetrators was heard calling the principal by the first name of Rich.
Ample facts are set forth to justify the issuing magistrate in believing that probable cause existed to search Howard's residence.
When the search warrant was executed defendant was placed under arrest and advised of his rights. The sawed-off shotgun was found in Howard's bed, and, when he became aware of its discovery, he voluntarily confessed. The officers present at the time testified to this effect. The motion to suppress this confession was denied and Bill No. 4 was reserved. Bill 5 was taken during trial when the court permitted Officer Poissenot to testify before the jury concerning Howard's inculpatory statement.
Although Howard testified at the pretrial hearing on the motion to suppress the confession, he made no attempt to deny or explain his confession. Nor did the defense call any other person of the several present in Howard's apartment at the time to testify or contradict the testimony of the arresting officers.
The question of the voluntariness of a confession is a question of fact for the trial judge. There is nothing to support a reversal of his determination that the confession of Howard was free and voluntary.
Bill No. 6 concerns the introduction into evidence, over objection of the accused, of the shotgun seized in Howard's apartment at the time of the arrest. The basis of the objection is that "it has not been identified by the victim as being the weapon used in the particular robbery in any form or fashion and it's not connected or hasn't even been precisely identified in any fashion."
Ambrosia testified that the weapon was the same as that used by Howard during the commission of the crime. He also identified the gun by a scratch on the weapon which he states was made when Howard swung the shotgun at him and it struck the cash register in his store. The officers testified they seized the gun in Howard's apartment and retained possession of it until it was turned over to the crime lab. Testimony also established that the weapon remained in the crime lab until it was brought to court.
Our decisions have consistently made it clear that connexity is a matter for the jury to decide, so long as the object introduced is shown to the satisfaction of the trial judge to have some relevance, that is, some logical or rational connection with a fact to be proved in the case. State v. Dillon, 260 La. 215, 255 So.2d 745 (1971). Connexity was amply shown and the defense contention is without merit.
Bill 7 was reserved when the forepiece of the shotgun was introduced in evidence over the objection "it hasn't been properly matched." A police officer testified that when the forepiece was recovered at the scene of the crime it was marked with his initials and placed on the evidence book of the Sixth District where it remained until brought to court. The criminologist called by the State testified the forepiece and the shotgun seized at Howard's apartment fit together and, in his opinion, the forepiece was part of that *204 gun. Thus, the chain of evidence established that the parts of the gun were "properly matched." The objection was without merit. See State v. Dillon, supra.
Bill No. 8 has to do with the introduction of the raincoat found in Howard's apartment. Objection to its introduction in evidence is based upon the fact the coat was "totally irrelevant; there has been no testimony of any trench coat."
Ambrosia testified that the person who attempted to rob him was wearing a trench coat or raincoat. The coat was, therefore, relevant and material to corroborate the victim's testimony and the State's case generally.
Bill No. 9 is based upon an objection to the introduction in evidence of five Bureau of Identification photographs already mentioned. The objection was that "the identification of this matter has been totally improper and inconclusive." The testimony is uncontradicted that Ambrosia selected the picture of Howard from the five presented on his own, without any suggestion of any officer. His signature and the date appear on the reverse of the picture of Howard which Ambrosia selected when the photographs were presented to him.
Finally, Bill No. 10 was reserved to the denial of a motion for a new trial. The motion simply alleges that the verdict is contrary to the law and the evidence, and that "A bill of exceptions reserved during the proceedings shows prejudicial error."
Countless decisions of this Court have stated that a contention that the verdict is contrary to the law and the evidence, without setting forth in particular the error complained of, presents nothing for review on appeal. As to the bills of exceptions, we have found they have no merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.