340 So.2d 256 (1976)
STATE of Louisiana
v.
Kenneth David SKELTON.
No. 58072.
Supreme Court of Louisiana.
October 14, 1976.
*257 A. Deutsche O'Neal, Jr., O'Neal & Ryan, Houma, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara A. Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., James L. Alcock, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant was indicted by a grand jury in Terrebonne Parish on a charge of having committed first degree murder, on December 17, 1974, a violation of R.S. 14:30(1). Defendant was tried by a jury of twelve and found guilty as charged. He was sentenced on December 17, 1975, to receive the death penalty. On December 17, 1974 Kenneth Skelton was working as a roustabout for a fair that had recently entered the Parish. During the early evening hours on this date, Kenneth met John Quinealty and Kent Carson on the fair ground. While there the three began drinking and smoking pot. At some time during the course of their meeting, they decided to commit a robbery in order to obtain some money to take a trip. The scheme was essentially for the three to hitchhike and rob the first person who offered them a ride. Quinealty, on signal, was to produce an unloaded gun and demand the victim's money. If the victim resisted, Skelton was to use the loaded gun on him.
In furtherance of their scheme, Carson went to his house and got an unloaded pistol. Quinealty, meanwhile, went to his home and took his father's loaded pistol. The three then reunited on the fair ground and continued drinking.
At approximately 8:00 p. m., the three started walking down a highway and were shortly offered a ride by Larry Joseph who, at that time, was on his way home. By this time defendant had the loaded pistol and Quinealty had the unloaded gun. Upon entering the victim's automobile, the defendant seated himself behind the driver, Carson sat next to him on the back seat, and Quinealty sat in the front seat. A short *258 time later, Carson asked the driver, Joseph, to pull over so he might relieve himself. Joseph complied with the request and came to a stop.
Defendant Skelton thereupon pulled out the loaded gun and shot Joseph in the back of the head. The car lurched forward and continued to roll until it hit a tree at the edge of a bayou. The three young men then got out of the car and ran into a nearby field where they remained until flushed out by an oil company security guard. They returned to the highway and were later picked up by a sheriff's unit.
ASSIGNMENT OF ERROR NO. 1.
Defendant contends the trial court erred in excusing for cause two prospective jurors. Defendant does not argue that, as per the provisions of article 798 of the Code of Criminal Procedure (adopted on the heels of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)) the jurors were not properly excluded.[1] And, of course, it is appropriate that he should not so argue inasmuch as the record makes it evident that these two witnesses unequivocally stated that they could not bring in a guilty verdict in a capital case because of their conscientious scruples against imposition of the death penalty.
Even were the jurors to have been improperly challenged under article 798 the matter would be moot, in view of the fact that defendant's death sentence in this case must be reduced in light of the United States Supreme Court decision in Roberts v. State of Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), invalidating Louisiana's death sentence for murder. See State v. Frezal, 278 So.2d 64 (La.1973); State v. Richmond, 278 So.2d 17 (La.1973).
What defendant argues here, however, is that the court's ruling excusing the two jurors deprived defendant of a trial by his peers since a fair cross-section of the population was not properly represented on the petit jury which was charged with determining his guilt or innocence.
There is no merit to defendant's position. Even if we were to assume that the issue was properly preserved at trial for our review, and if we were to assume that defendant's position in this regard has merit, he is not in a position to complain inasmuch as the transcript shows that the state used only one of the twelve peremptory challenges allowed to it by law. Under the provisions of article 800 of the C.Cr.P. "the erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law." State v. Michel, 225 La. 1040, 74 So.2d 207 (1954); State v. Raymond, 258 La. 1, 245 So.2d 335 (1971).
ASSIGNMENT OF ERROR NO. 2.
Defendant argues that the trial court erred in allowing the prosecuting attorney to make statements in closing argument designed to appeal to the prejudice of the jury. The prosecutor had referred to the murder as "an execution, a cold blooded murder." He likened it to executions we see on television "where the victim is trussed up and a bullet put in the back of his head."
Whatever the merit of the defense position that the argument was impermissible, we may not properly consider it inasmuch as defendant did not object at any time to the remarks made in closing argument by the prosecuting attorney. Article 841 of the Louisiana Code of Criminal Procedure in relevant part provides:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."
See also State v. Morris, 261 La. 1069, 262 So.2d 324, 325.

* * * * * *
*259 Article 841 of the Code of Criminal Procedure and the jurisprudence in interpreting that article requires a complaining party to make a contemporaneous objection. Counsel's argument in brief that he was unaware of the prejudicial effect this statement had upon the jury until after the transcript was filed is to no avail.
The assignment does not have merit.
ASSIGNMENT OF ERROR NO. 3.
Defendant assigns as error the trial court's refusal to grant his motion for a new trial. His argument is two-fold. First, he asserts that the state failed to prove a specific criminal intent to kill. He argues "that there is sufficient evidence in the record to show that he was so intoxicated and so far under the influence of narcotics that his specific intent was diminished."
In State v. Plummer, 281 So.2d 716 (La.1973), we stated:
LSA-C.Cr.P. Art. 851(1) permits the trial judge to grant the defendant a new trial if the verdict rendered by the jury is contrary to the law and the evidence. This power is exclusively that of the trial judge when inquiry is directed to the alleged insufficiency of the evidence (as contrasted with no evidence at all). This Court is prohibited from reviewing questions of fact in criminal cases. LSA-Const. Art. VII, Sec. 10; LSA-C.Cr.P. Art. 858. In accordance with these provisions, we have uniformly held that a bill of exceptions reserved to the refusal of the trial judge to grant a motion for a new trial based on Article 851(1), relative to sufficiency of the evidence presents nothing for our review. State v. Crockett, 262 La. 197, 263 So.2d 6 (1972); State v. Williams, 262 La. 160, 262 So.2d 507 (1972); State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Singleton, 252 La. 976, 215 So.2d 512 (1968); State v. Stokes, 250 La. 277, 195 So.2d 267 (1967)."
See also State v. Jack, 332 So.2d 464 (La.1976); State v. Vince, 305 So.2d 916 (La. 1974).
Inasmuch as there was some evidence to prove specific intent to kill, and inasmuch as the adverse ruling of the trial judge on sufficiency of evidence is not reviewable by this Court, the argument lacks merit.
Second, defendant argues he should have been granted a new trial because a member of the jury panel that tried him was a deputy sheriff for Terrebonne Parish (this fact had not been revealed during voir dire examination). An evidentiary hearing was held by the trial court to determine the merit of defendant's argument. It was discovered that the juror complained of was commissioned as a deputy eleven months prior to trial; that the commission was issued for the sole purpose of allowing the juror to carry a gun while in the possession of large sums of money in connection with his business; that he received no salary and no uniform, and did not ever ride with deputies in the actual performance of their police duties; and that he had never made an arrest under the authority of his commission.
In State v. McClure, 258 La. 999, 249 So.2d 109, 113 (1971), a case presenting facts similar to those in the instant case, we approved the trial court's failure to grant defendant a new trial and approvingly noted the following language used by the trial judge:
"although [the juror] was an `honorary member' of the Monroe City Police, the latter explained that `he had never had any work or other direct association, official or otherwise, with the municipal police department (which was not involved in this prosecution); nor had he ever performed any service for the department or any of its members.' The judge further observed that `His relationship with the department or its work or its personnel was as different from that of numerous other citizens who "carried cards" and that `There was no ground for fear of prejudice.'"
Defendant apparently argues that the juryman by virtue of his title could not under any circumstances return a fair and impartial verdict based upon the evidence presented.
*260 Reviewing the facts of the instant case and in light of the ruling of this Court in State v. McClure, supra, we find that the assignment lacks merit.
ASSIGNMENT OF ERROR NO. 4.
Defendant complains "that the imposition of the death penalty in this case was cruel, harsh and in violation of the constitutions of the United States and Louisiana." In view of the United States Supreme Court decision in Roberts v. State of Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), this assignment has merit. For the reasons more fully discussed in our recent opinion in State v. Jenkins et al., 340 So.2d 157 (La.1976), we will remand this case with instructions to the trial court to sentence defendant to life imprisonment without eligibility for parole, probation or suspension of sentence for a period of twenty years, the sentence mandated for second degree murder at the time of the offense.
For the reasons assigned the defendant's conviction is affirmed but the death sentence imposed upon him is annulled and set aside and the case is remanded to the district court with instructions to the trial judge for sentencing of defendant to life imprisonment without eligibility for parole, probation or suspension of sentence for a period of twenty years.
SUMMERS, J., concurs in the conviction but dissents from the penalty holding. See dissent in State v. Lee, La., 340 So.2d 180.
MARCUS, J., concurs with penalty directed by majority for reasons assigned in his concurring opinion in State v. Jenkins, 340 So.2d 157 (La.1976).
NOTES
[1] Article 798 of the C.Cr.P. provides in pertinent part:

"It is good cause for challenge on the part of the state, but not on the part of the defendant that:
(2) The juror tendered in a capital case has conscientious scruples against the infliction of capital punishment; * * *."